UNITED STATES of America,
Plaintiff-Appellee,

v.

Luis ALOMIA–RIASCOS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Oscar Dejesus ARANGO–VERGARA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Sinbad PEREA–BALTAN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Wilfredo CAICEDO–VALENCIA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Optaciano RIVAS–RIVAS,
Defendant-Appellant.

Nos. 86–5104, 86–5112, 86–5117,
86–5118 and 86–5120.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1987.

Decided Aug. 10, 1987.

Milton Gordon Widenhouse, Jr., for defendants-appellants.

Gloria C. Phares, Dept. of Justice (Samuel T. Currin, U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINS, Circuit Judges, and VAN GRAAFEILAND, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

WILKINS, Circuit Judge:

Defendants appeal from their convictions for possession with intent to distribute marijuana while on board a vessel within the customs waters of the United States in violation of 21 U.S.C.A. § 955a(c) (West 1981). Primarily, they contend that their convictions under Section 955a(c) violate the constitutional prohibition against *ex post facto* laws. We affirm the convictions.[1]

---

**1.** Defendants' remaining allegations of trial court error are without merit and do not warrant discussion.

**2.** Communication No. 101/13/2 from Ministry of Foreign Affairs, Barbados.

## I.

Defendants, all foreign nationals, were crew members aboard the *Mary Gloria,* a vessel registered in Barbados. The *Mary Gloria* was intercepted by the United States Coast Guard on March 4, 1986, approximately 600 miles off the coast of North Carolina and 300 miles southwest of Bermuda. With the consent of the ship's master, Defendant Arango-Vergara, Coast Guard officials boarded and searched the vessel, discovering over 50,000 pounds of marijuana.

Coast Guard officials remained on board with the master's consent while Barbados was contacted through diplomatic channels. The next day the Ministry of Foreign Affairs of Barbados communicated that the Government of Barbados had "no objection if the Government of the United States of America seizes the motor vessel *Mary Gloria* in accordance with United States law ... and institutes proceedings against it in accordance with United States law."[2] After receiving this communication Defendants were transported to Wilmington, North Carolina and subsequently indicted.

## II.

Defendants were convicted under the Marijuana on the High Seas Act of 1980, Pub.L. No. 96–350, § 1, 94 Stat. 1159 (1980), 21 U.S.C.A. §§ 955a–955d (West 1981)[3] which provides in part that:

It is unlawful for any person on board any vessel within the customs waters of the United States to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

21 U.S.C.A. § 955a(c) (West 1981). "Customs waters" is defined in 19 U.S.C.A. § 1401(j) (West 1980):

The term "customs waters" means, in the case of a foreign vessel subject to a

---

**3.** Sections 955a to 955d were amended and transferred to 46 U.S.C.A. §§ 1901 to 1904 (West Supp.1987) under the Maritime Drug Law Enforcement Act, Pub.L. No. 99–570, § 3202, 100 Stat. 3207, 3207–95, Pub.L. No. 99–640, § 17, 100 Stat. 3545, 3552 (1986).

treaty or other arrangement between a foreign government and the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high seas the laws of the United States, the waters within such distance of the coast of the United States as the said authorities are or may be so enabled or permitted by such treaty or arrangement and, in the case of every other vessel, the waters within four leagues of the coast of the United States.

The "arrangement" necessary to create customs waters around a specific vessel may be informal, as long as there is a clear indication of consent by the foreign government. *United States v. Gonzalez*, 776 F.2d 931, 933 (11th Cir.1985).

Defendants contend that location of the *Mary Gloria* in the customs waters of the United States is a jurisdictional requisite and an essential element of their alleged violation of Section 955a(c). They do not dispute that the consent given by the government of Barbados was a sufficient arrangement to create customs waters around the *Mary Gloria.* However, they assert that their convictions under Section 955a(c) violate the constitutional prohibition against *ex post facto* laws since the consent which created the customs waters was not obtained until after the *Mary Gloria* had been boarded and searched. We find no violation.

### III.

The Marijuana on the High Seas Act of 1980 was enacted in an effort "to prohibit all acts of illicit trafficking in controlled substances on the high seas which the United States can reach under international law." H.R.Rep. No. 323, 96th Cong., 1st Sess. 11 (1979). Congressional intent was clearly established by the following language: "This section is intended to reach acts of possession, manufacture, or distribution committed outside the territorial jurisdiction of the United States." 21 U.S. C.A. § 955a(h) (West 1981). This court has recognized that Congress intended to exer-

cise the maximum possible criminal jurisdiction over drug smugglers. *United States v. Pena-Jessie,* 763 F.2d 618, 621 (4th Cir.1985).

██ International law permits the exercise of criminal jurisdiction by a nation under five general principles: territorial, national, universality, passive personality and protective principles. *United States v. Romero-Galue,* 757 F.2d 1147, 1154 n. 20 (11th Cir.1985), *citing Rivard v. United States,* 375 F.2d 882, 885 (5th Cir.), *cert. denied,* 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967). The protective principle of international law permits a nation to assert subject matter criminal jurisdiction over a person whose conduct outside the nation's territory threatens the national interest. *Rivard,* 375 F.2d at 885 n. 7; *see also Chua Han Mow v. United States,* 730 F.2d 1308, 1312 (9th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). Thus, under international law the United States could exercise criminal subject matter jurisdiction over foreign nationals for possession of large quantities of narcotics on foreign vessels upon the high seas, even in the absence of a treaty or arrangement. *Romero-Galue,* 757 F.2d at 1154; *see also United States v. Peterson,* 812 F.2d 486, 493–94 (9th Cir.1987).

██ Although desiring to exercise the full extent of extra-territorial jurisdiction, Congress also recognized "exclusive state flag jurisdiction as the premise underlying the concept of freedom of the high seas...." H.R.Rep. No. 323, 96th Cong., 1st Sess. 7 (1979). To minimize possible conflicts, Congress afforded a legislative courtesy to other nations by adopting the customs waters approach and conditioning enforcement of the Act upon their consent. *Gonzalez,* 776 F.2d at 940. The governmental consent which creates customs waters is not a jurisdictional requisite or an essential element of a Section 955a(c) violation. What Congress has made unlawful is "any possession of marijuana on the high seas with intent to distribute." *Id.* Governmental consent is simply a diplomatic requisite that must be met prior to seizure of the vessel and its crew and an element which must be established at trial to the satisfaction of the trial court.

## IV.

Congress may not pass an *ex post facto* law. U.S. Const. art. I, § 9, cl. 3. An *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed. *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). There are two critical elements which constitute an *ex post facto* law: it must apply to events occurring before its enactment and it must disadvantage the offender affected by it. *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964. The Act was passed in 1980 and Defendants were apprehended while smuggling marijuana in 1986. Therefore, Section 955a(c) is not being applied retroactively to acts committed before it was passed. *Gonzalez*, 776 F.2d at 938. The fact that Barbados consented to enforcement of Section 955a(c) against Defendants after the *Mary Gloria* had been boarded and searched simply does not constitute a violation of the prohibition against *ex post facto* laws.

AFFIRMED.